

# THE ATTORNEY GENERAL
## OF TEXAS

**PRICE DANIEL**
ATTORNEY GENERAL.

AUSTIN 11, TEXAS

233

March 28, 1952

Hon. M. B. McCoy, D.C.     Opinion No. V-1426
President, Texas Board of
  Chiropractic Examiners   Re: Authority of the Board
Austin, Texas                 of Chiropractic Exam-
                              iners to require penal-
                              ties or examinations as
                              a prerequisite to rein-
                              statement of a license
                              suspended for nonpayment
Dear Sir:                     of annual renewal fees.

        Your request for our opinion reads in part
as follows:

        "Section 8 of the Chiropractic Act
    provides that each Chiropractic Licensee
    shall pay an annual renewal fee.

        "Several licensees failed to pay
    their 1951 renewal fee, and their licenses
    were suspended.

        "Several of the licensees are now
    asking that their licenses be reinstated.
    The Board is requiring applicants for re-
    instatement to submit a request for rein-
    statement together with an affidavit set-
    ting out facts adequate to show such
    licensee entitled to be reinstated.

        "The Board believes that in some in-
    stances it might be well to require the ap-
    plicant for reinstatement to take an exami-
    nation.  The Board is also of the opinion
    that the applicant should be charged either
    a reinstatement fee, or as a penalty, pay
    all past due annual renewal fees in order
    to get his license in good standing.

        "The Board has discussed this problem
    in open meeting, and finds a difference of
    opinion exists among the members as to the
    authority of the Board with reference to
    the above.

"Question 1. Can the Board rule that an applicant for reinstatement of a license must pay a penalty as a pre-requisite for the reinstatement of a license after it has been suspended for nonpayment of annual renewal fees?

"Question 2. Can the Board rule that as a prerequisite for the rein-statement of a license suspended for nonpayment of annual renewal fees the applicant must pay the annual fees for all years during which his license has been suspended?

"Question 3. Can the Board if it deems necessary require the applicant for reinstatement of a license suspended for nonpayment of annual renewal fees to take an examination to enable the Board to consider whether or not the applicant should be considered as eligible for re-instatement?"

In Corzelius v. Railroad Commission, 182 S.W.2d 412, 415 (Tex. Civ. App. 1944), it is stated:

"The general rule is well settled that boards or commissions which are crea-tures of the statutes, can exercise only such authority as is conferred upon them by law in clear and express language <u>and that authority will not be construed as being conferred by implication.</u>" (Emphasis added.)

Section 8 of Article 4512b, V.C.S. (Chiro-practic Act) provides in part:

"It shall be unlawful for any person who shall be licensed for the practice of chiropractic by the Texas Board of Chiro-practic Examiners as created by this Act, unless such person be registered as such practitioner with the Texas Board of Chiro-practic Examiners on or before the first day of January, A. D. 1950, or thereafter registered in like manner annually as pro-vided by this Act on or before the first

day of January of each succeeding year, to
practice chiropractic in this State. Each
person so licensed and registered shall be
deemed to have complied with the require-
ments and prerequisites of the laws govern-
ing the practice of chiropractic in this
State. Each person so registered with the
Texas Board of Chiropractic Examiners shall
pay in connection with each annual registra-
tion and for the receipt hereinafter pro-
vided for, a fee to be fixed by the Texas
Board of Chiropractic Examiners not to ex-
ceed Fifteen Dollars ($15), which fee shall
accompany the application of every such
person for registration. Such payment shall
be made to the Texas Board of Chiropractic
Examiners. Every person so registered
shall file with said Board a written ap-
plication for annual registration, setting
forth his full name, his age, post-office
address, his place of residence, the coun-
ty or counties in which his certificate
entitling him to practice chiropractic has
been registered, and the place or places
where he is engaged in the practice of
chiropractic, as well as the college of
chiropractic from which he graduated, and
the number and date of his license certifi-
cate.

"Upon receipt of such application,
accompanied by the registration fee, the
Texas Board of Chiropractic Examiners, after
ascertaining either from the records of the
Board or from other sources deemed by it to
be reliable, that the applicant is a licensed
practioner of chiropractic in this State,
shall issue to the applicant an annual regis-
tration receipt certifying that the applicant
has filed such application and has paid the
registration fee mentioned for the year in
question; . . ."

Section 14 of the Act provides in part as
follows:

"The Texas Board of Chiropractic Ex-
aminers shall have the authority to revoke,
cancel, or suspend the license of any person

. . . for any of the following reasons:

"1.  For failure to comply with,
or the violation of, any of the provi-
sions of this Act; . . ."

At the outset we think it important to
point out the distinction between the suspension
of a license by the Board under Section 14 and the
automatic cessation of a licensee's right to engage
in the practice of chiropractic in this State be-
cause of his failure to pay the annual registration
fee under Section 8.  We do not interpret Section 8
as requiring a licensee who is not presently engag-
ing in the practice of chiropractic in this State to
pay the registration fee in order to keep his license
in good standing.  This section merely makes it un-
lawful for a·licensee to practice in Texas unless he
has registered and paid the registration fee for the
current year.  If he is not engaging in the practice
of chiropractic in this State, he is not required to
maintain current registrations, and he has not vio-
lated or failed to comply with the provisions of the
act by failing to register during that period.  Con-
sequently, there has been no occasion by such fact
alone for the Board to suspend his license; rather,
he has simply failed to meet a condition precedent
to his right to engage in the practice for that year.

We find nothing in the Chiropractic Act
which would prevent a licensee who has discontinued
his practice in this State from resuming practice at
a later date without payment of registration fees
for prior years.  The only thing that can be re-
quired of him is registration and payment of the
fee for the then current year.

However, if a licensee engages in the
practice of chiropractic in this State without
being currently registered, then he has violated
the provision of Section 8 making such practice
unlawful, and the Board would have authority to
cancel, revoke, or suspend his license under Sec-
tion 14 "for failure to comply with, or the vio-
lation of, any of the provisions of this Act."

As to a licensee whose license has been
suspended for practicing chiropractic without hav-
ing registered and paid the required fee, the answer

is obscured by the fact that the Chiropractic Act is silent with regard to the rights of the licensee or the powers of the Board in the reinstatement of a license after suspension. However, we are of the opinion that the Board does not have authority to assess a penalty or a reinstatement fee. Fees and penalties may be assessed only when they are provided by law. McCalla v. City of Rockdale, 112 Tex. 209, 246 S.W. 654 (1922); Nueces County v. Currington, 139 Tex. 297, 162 S.W.2d 687 (1942); Helm v. Wells Fargo & Co. Express, 177 S.W. 134 (Tex. Civ. App. 1915). There is no provision of the Chiropractic Act authorizing the Board to assess a penalty or reinstatement fee upon reinstatement of a suspended license.

Similarly, it is our opinion that the Board may not require the payment of fees for past years as a condition to reinstatement. The possible consequences of practicing without registration are found in the provisions authorizing revocation, suspension, and nonissuance of licenses, injunction, and criminal prosecution. However, there is no provision in the act authorizing the collection of past fees as a condition to reinstatement of a suspended license.

Neither is there a provision in the Chiropractic Act authorizing the Board to require a person whose license has been suspended to take an examination before his license is reinstated. While we do not think there is any question as to its power to reinstate a suspended license, the Board in restoring the privileges which the license confers may not attach conditions or requirements not set out in the statute. Some of the licensing statutes of this State do grant the administering board authority to require re-examination and payment of past registration fees upon reinstatement of a suspended license. However, the powers of the Board of Chiropractic Examiners must necessarily be found in the provisions of the Chiropractic Act. Since that statute does not grant these powers to the Board, it is lacking in authority to exercise them.

Unless statutory provisions call for a different construction, suspension of a license ordinarily connotes a temporary withholding of the privileges attaching thereto, while a cancellation or revocation connotes a complete nullification or

destruction of the basis for the privileges.  We
are not here expressing an opinion on the authority
of the Board to reinstate licenses which have been
cancelled or revoked or to require an examination
as a condition to reinstatement in those cases.

## SUMMARY

The Board of Chiropractic Examiners
is not authorized under existing laws to
assess a penalty or reinstatement fee or
to require the payment of registration
fees for past years as a prerequisite to
reinstatement of a license which has been
suspended for nonpayment of annual regis-
tration fees.  Neither does the present
law authorize the Board to require an ap-
plicant for reinstatement of a suspended
license to take an examination before re-
instatement.

Yours very truly,

APPROVED:

J. C. Davis, Jr.
County Affairs Division

Mary K. Wall
Reviewing Assistant

Charles D. Mathews
First Assistant

BA:mh

PRICE DANIEL
Attorney General

By Bruce Allen
Bruce Allen
Assistant